Good morning, Your Honor. Good morning, Your Honor. My name is Kevin Holden, and I represent Southpeak, Terry Phillips, and Melmie Meraz, and if it pleases the Court, I'd like to proceed on our appeal. There are a number of issues that we're looking at today, and I'm going to try to touch on what I think are some of the more important issues, but there's no way we can certainly get to all of them, so I rest upon the arguments that are made in the brief. But let me first go through the arguments in the matter in which they were presented to this Court. The first issue has to do with the statute of limitations. In particular, what is the statute of limitations, not just for claims under 1514A of Sarbanes-Oxley, but Ms. Jones' claims. We propose that the appropriate statute of limitations is the two-year statute of limitations under 1658B. The primary argument against this is that while that provision provides for a statute of limitations for claims that involve fraud, and this claim surely does, admittedly, involve fraud, the Department of Labor and Ms. Jones would argue that because we must prove fraud, therefore, that statute of limitations does not apply. That's simply not the case. You don't need to prove fraud in this instance. This only has to be a claim that involves fraud. Well, it doesn't say that. It doesn't say a claim that involves fraud. The statute says that involves a claim of fraud, okay? Correct. And there's a distinction, isn't it there? Because claim of fraud is a term, and where is the claim of fraud in this case? Well, there is no specific claim of fraud. Right, and that's why I'm wondering. It seems to me that you're moving the word involves arguably to your advantage in terms of how the statute is actually set out. I don't believe that claim of fraud is, in fact, a term of art, and I haven't seen any case that interprets it in that fashion. I think if you look at the statute itself, that 1658 was enacted at the same time of Sarbanes-Oxley, and all of the claims of fraud that you can assert within 1514A are, in fact, claims that involve fraud. So I don't believe that if— This isn't a claim of fraud, though, is it? This is a retaliation claim. It's a retaliation claim that involves a claim of fraud. She claimed that there was fraud, and then she claimed she was terminated for asserting that claim. I don't see how that doesn't involve a claim of fraud. Does she have to prove fraud? She does not have to prove fraud. She can prove fraud, but she has to prove that she reasonably believed her claim of fraud. So she has to prove that she asserted a claim of fraud, and she has to prove that she reasonably believed that she had a claim of fraud, and only then can she proceed and succeed under the statute. Assuming that there is a two-year statute of limitations, I would like to quickly go through what the timeline was. Ms. Jones was terminated on August 4, 2009. She filed her OSHA—I'm sorry. Her claim was filed on August 14, 2009. She then filed a claim with OSHA on October 5, 2009. Now importantly, between October 5, 2009 and June 23, 2010, Ms. Jones and her counsel had significant and repeated and personal contacts with the OSHA investigator. According to the timesheets that were submitted in this case, and they're at the Joint Appendix 150 to 152, 24 times Ms. Jones and her counsel had contacts with OSHA. Now, and this leads into the exhaustion requirement, because if in fact that Ms. Jones is not the only person that has responsibility for former complaint, she claims that so does OSHA, at some point OSHA has to take responsibility for the fact that they spoke with Ms. Jones 24 times, and yet there was no amendment of the complaint to clarify or assert a claim that Ms. Meraz or Mr. Phillips terminated her employment. Moving along in the timeline, she withdrew her claim on June 23, 2010, and then on June 26, 2010, the OSHA issued— an investigative report and recommendation that the claim be dismissed. Now, as this Court has held, filing the notice and then waiting 15 days is not a lawful requirement. Once 180 days has accrued, has gone by, you've got the right to file in federal court. Nothing more need be done. This is not like the EEOC, where it's an administrative procedure and you have to get to write the sue letter. After 180 days have gone, then your right to file starts to run again. Whether we look at a tolling that's based on the April 4th date, which is when the 180 days ran up, or the June 23rd date, or the June 26th date, this case was filed more than two years after these claims arose, and as such, the claims are time-barred. I would point out one further case in the Statute of Limitations, and that is the Department of Labor cites the Hemphill case as supporting their position. I find that curious because the Hemphill case does not specifically support the position for which it is asserted. It merely said that there is no specific or heightened pleading requirement to assert a claim under Sarbanes-Oxley. But Hemphill's more importantly also stands for the proposition that non-pecuniary damages are not available under this statute. Moving to the exhaustion argument, Your Honors, it's important to recognize that the OSHA regulations are jurisdictional and not conciliatory. This is a proceeding where if you file a claim and you win your claim, like take for instance if Ms. Jones in this instance prevailed before OSHA. They issued within, let's say, 50 or 60 days a ruling that in fact her claims were violated and they found that she's entitled to $10,000 in damages. Her sole remedy would be to appeal that decision against South Peak to the ARB if she wished to appeal it or just accept it. Either way, at the termination of that appeal, the sole avenue would be then to appeal that decision to this Fourth Circuit. Now, if that in fact happened, Ms. Jones would have no ability, no right, to file a claim against Ms. Meraz or Ms. Phillips. Likewise, if she had lost that claim against South Peak, and it's admitted that's the claim that was exhausted, then South Peak could have tried to fight against the appeal. But if Ms. Jones would have lost that, again, Ms. Jones wouldn't have the ability to file in federal court. So the exhaustion here fails in that not only did Ms. Jones fail to identify Mr. Phillips or Ms. Meraz in the caption of the complaint, she also failed to even allege that Phillips or Meraz terminated her employment. So it's not just a failure to identify them in the caption or identify them as the people that are being sued, but it's also that that specific claim was not identified. If we look to the complaint itself, this is at JA 173, and admittedly in other places in the Joint Appendix, the first paragraph of the complaint reads, On August 14, 2009, in a clear violation of the Act, South Peak terminated Ms. Jones' employment, apparently in retaliation for Ms. Jones attempting to correct statements and periodic reports that were filed. She does not say that Ms. Meraz terminated the employment or that Mr. Phillips terminated the employment. Now furthermore, as I suggested in the timeline, according to the manual that was cited by the Department of Labor, OSHA has a responsibility to shape the complaint, investigate the complaint. The Department of Labor, through OSHA, instructs that the complainant should share documents with the respondent. Yet nowhere has there been an amendment to specifically acknowledge that there is a claim against Mr. Phillips or Ms. Meraz, either through all those interactions. Now one can sit back and look and say, Okay, well, sure, the Department of Labor respectfully OSHA made a mistake here, according to Judge Payne, was incompetent. Now I think that that goes too far and not far enough in some regards, because it's not just OSHA that is at fault here, it's Ms. Jones. She is the one that had the responsibility, the burden, to file a complaint that was exhausted. Not Mr. Phillips, not Ms. Meraz. And even still, Ms. Jones knew that the complaint was being processed only against South Peak. But she listed Terry Phillips and Melanie Meraz in the complaint. She listed them. She was told to provide the names and addresses of the companies and persons who were alleged to have violated the Act, who the complaint is being filed against. That's correct. Terry Phillips, Chairman of the Board, Patricia Straken, and Melanie Meraz. So she pretty clearly identified them, didn't she there? I don't think so, Your Honor. I think that she did identify them as Chairman of the Board, Vice President of Operations, and the Chief Executive Officer. She identified them as the persons who were alleged to have violated the Act. Right. And we think that that clearly was not the way OSHA understood it. She here, I think, identified those people in a way at least ambiguous as to those are the three top people at the corporation. This is who at the corporation is the contact. These are the people you're supposed to talk to. That wasn't the question she was responding to. She was responding to the question, the names and addresses of the companies and persons who were alleged to have violated the Act, who the complaint is being filed against. That's the question that she posed. It's not that she was responding to a question from OSHA. No, that was the heading, the bolded heading, that she had to place this information under. Right. I agree that that's what it says. But in response, there is no doubt that OSHA only interpreted this. Isn't that OSHA's problem and not her problem? It's not. The statute requires that OSHA send notice of the complaint to the respondent. In this case, it is conceded that South Peak is the only respondent that got that notice, that statute-required notice. Now, Jones at that point should have known and said, hey, wait a minute, I'm trying to exhaust my claims against these people. What's her duty, though? The statute, 49 U.S.C. 42.121.B.1, says the Secretary of Labor shall notify the person named in the complaint. So you're saying that we should read into the statute an additional obligation of the complainant? I don't think we need to read into it that far, Your Honor, and I'll tell you why. Because the statute also provides that you can only file in court if there is no undue delay caused by the complainant. Thus, I think you can read that as seeing that the complainant does have some obligation to act reasonably and to help OSHA process her complaint. She received, and she knew throughout these proceedings, that it was just a complaint against South Peak, and she did nothing to correct it. So even if we take a step back and say, okay, OSHA made a mistake, Ms. Jones may have wanted to assert a claim against this person, but she certainly didn't proceed with one against them, didn't try to settle one against them, didn't try to get what any other position was except by South Peak. She knew all of that 24 times. Now, we have to look at the due process and fairness rights of Mr. Phillips and Ms. Meraz. They didn't know that the complaint was being asserted against them. Is it fair for them to not be entitled to the rights of a hearing and notice and the administrative process? Would it not have been more fair, if not required, for them to be able to say, hey, I didn't do this, but I'm willing to try to resolve it. Or, hey, I want a ruling right now. I don't want to go to federal court. Let's get this resolved right now. Those rights were denied, and therefore those claims weren't exhausted. So I would submit, Your Honor, that there's been no exhaustion, and there certainly shouldn't be any tolling for Mr. Phillips and Ms. Meraz. On the additional arguments, on the emotional damages, I rely upon the briefs, but I want to point out one quick thing that I think is worth looking at. From 2004 through 2010, seven district court cases, all uniformly and without question, each said non-pecuniary damages not available under the statute. Three of those cases held that there's no right to a jury trial. In 2010, Congress amended Sarbanes-Oxley, and in amending Sarbanes-Oxley, they specifically said, okay, you've got it wrong. There is a right to a jury trial. And they said, we're going to expand the time to file from 90 days to 180, but they did not change the remedial provision of the statute. I see my time is up. You've got some time remaining after your opponents, so let's hear from Mr. Thorsen. Good morning. May it please the Court. Mr. Holden, for the record, I'm James Thorsen, counsel for Andrea Jones, and I'm going to respond to some of the arguments Mr. Holden advanced to the Court. The matter is governed, in this case, by 1658A. It's a four-year statute of limitations. This is not a fraud claim. It's a retaliation claim. 1658B, 1, and 2 relate to fraud issues. Although Mrs. Jones alleged that what she thought was fraudulent activity, it was ultimately a whistleblower action, a retaliation that she brought. And that's all I'm going to comment on that. Mrs. Jones proceeded within the statutory time, filed notice with OSHA. She clearly laid out that not only South Peak was responsible for Terminator, because that's the employer's corporation, but she specifically identified Terry Phillips and Melanie Meraz, along with Patrice Strachan, as the people responsible for the violation of the act. She clearly laid that out. She didn't list their address. She didn't list them in the caption of the complaint, but there's no requirement to list them in the caption of the complaint. And as the District Court noted, the address for the corporate officers would be assumed to be the same corporate address as the corporation. Interestingly, Mr. Phillips was noted as the contact person for the complaint. Mr. Phillips was interviewed by OSHA. Mrs. Meraz was interviewed by OSHA. They had counsel representing them. And if there's any doubt that Mr. Phillips was involved in any activity, the SEC found that he was responsible to the extent that there was a consent order issued by the SEC where Mr. Phillips paid a $50,000 fine regarding the same matter because Mrs. Jones reported Mr. Phillips' action to the SEC. So we think all Mrs. Jones had to do was to notice the OSHA agency. She properly did so. Once they were on notice, she exhausted her administrative remedies. Whether OSHA chose to send a separate package out to Mr. Phillips and Mrs. Meraz, that's not Mrs. Jones' issue. She had no knowledge or control over it. I take disagreement with Mr. Holden's statement that Mrs. Jones knew about Mr. Phillips and Mrs. Meraz not being noticed on the matter. She didn't. And I think I can't cite to the record on that, but from my experience as counsel on the matter, we took jurisdictional discovery, extensive jurisdictional discovery, and it was clear that even during the time of the OSHA investigation, she wasn't aware that Phillips and Meraz were not put on notice. Her counsel, when they withdrew the matter out of the Department of Labor's jurisdiction, sent notice to Phillips and Meraz, and they got notice of her intent to proceed in federal court. And they got notice of that in September of 2010, and so it's not like they were caught by surprise when the matter was finally moved on. Emotional damages, Your Honors. The Fifth Circuit just recently decided on November 12, 2014, that emotional damages are part of the make-all provisions under the whistleblower provisions of this case. That falls in line with the Tenth Circuit decision in Lockheed, finding emotional damages are covered by the act. The make-all provisions, Congress intended, as the Hilleberton decision said, Congress meant when it said make-all, all relief necessary to make-all, and we think that the emotional damages is actually covered. The other component of emotional damages is the amount of emotional damages, $100,000. District Court Judge Payne reduced the amount, $123,500, against each defendant from $178,500 down to $50,000 each, and analogized the holding in Hong v. Rectors and Visitors of the University of Virginia. That court had $100,000 for the emotional damages for a similarly situated whistleblower. So we think that as a matter of law in those first three matters, the District Court was correct in holding that 1658 was the governing statute, that the OSHA had exhausted administrative remedies, and that emotional damages are allowable under law of the case. Next issue is the verdict. Mr. Holden didn't talk about the verdict, but we think that the court did not abuse its discretion in correcting the verdict. The jury came back, found liability for Phillips and Meraz, and had zero damages on it. It was a conflicting, inconsistent verdict. The court asked about it, sent it back to the jury, and ultimately the jury put the figures of $178,500 each for Phillips and Meraz as to emotional damages, awarded the full amount basically claimed for back pay and compensatory damages against the corporation. The back pay was approximately $450,000 and compensatory damages of $123,000, which almost tracked to the dollar Mrs. Jones' damage of her loss of her savings and equity line and actual expenses that she incurred as a result of being unemployed for the period of time. So we think that there was no abuse of discretion by the District Court in affirming the jury's verdict and had that authority under Rule 49B of the Rules of Federal Civil Procedure. The next issue is the attorney's fees. Mr. Holden didn't talk about the attorney's fees, but we think that the issue of attorney's fees in this case do not need to be disturbed by this court, even under the McAfee decision, if this court finds that the District Court somehow failed to properly analyze the attorney's fees under the third step of McAfee. In this case, this case is the total opposite of McAfee. McAfee was a tail wag the dog case, literally and figuratively. That was a dog bite case, the court may remember. Anyway, the issue in McAfee was they got out-of-product expenses of $2,900 and they asked for attorney's fees of $334,000, a ratio of 109 to 1. This case is totally different. We got 730 . . . The District Court didn't follow the three-step process set forth in McAfee. I'm sorry, Judge. The District Court here, in your case, did not follow the three-step process set forth in McAfee, did it? I think it did, Judge, in an overall sense. That is, I think it considered the success of the plaintiff relative to the amount sought. If you look at the amount sought, we allege it was just over $2 million. It did not include punitive damages. We didn't ask for punitive damages, but we asked for attorney's fees, back pay, compensatory damages, emotional damages. When you look at the total amount the plaintiff ended up getting at the end of the day, which was $1,091,000, when you include attorney's fees in the case, that was a significant result. The court recognized that was a significant result. But the court never accounted, never specifically addressed what McAfee says the court must do. McAfee says the court is obliged to subtract fees for hours spent on unsuccessful claims unrelated to the successful ones. The District Court did do that, I believe, Your Honor. Well, the District Court said that the claims were all related, or were basically related. Did he not, Judge Payne? Yes. Okay, but did the District Court specifically address what the District Court considered to be unrelated to the successful claims? Or did the District Court ever say there are no matters unrelated to the successful claims? No, I think the District Court did discuss and reduce . . . Can you return the record, that is? Judge, we cite it in our brief, but the District Court specifically took off some 20-some hours of time spent on . . . Right. But did the District Court ever say that there are no matters remaining that are unrelated to the successful claims? And did the District Court address that after trial? I can't say right now, Judge. Yeah, maybe I'm confused on it. I'll check. Hold on. I think my understanding of the court's analysis, it did the Lodestar evaluation, reduced it for block billing in certain instances, reduced it for the unsuccessful claims in Counts 2, which is the Dodd-Frank complaint, and Count 3, which was the contract claim. We would say that the damages under Count 2, Dodd-Frank, and the contract claim for bonuses were all subsumed into the Count 1 amount that was recovered in this case. Right, and the District Court said that Jones's success was substantial and material, I think were the words. Yes. But is there anything in the record that talks about the lack of success in any elements of the case that went to the jury? I guess that's really what . . . No, and I don't think the court found that there was any lack of elements of success in the case . . . You're saying just a fair reading of the record suggests that the District Court thoroughly analyzed it and the fact that the District Court didn't point to any elements . . . No, I'm not aware of any elements that we lost when we went to trial under Count 1, other than the post-trial motions. We lost on the remittitor. We won on the new trial motion. And so I think that the court overall considered all of that, considered the material success. And again, the bottom line is that the issue is the success, plaintiff's success is the most critical factor. And that's cited by the Hensley case. And I think in this case, we had a very, very successful case. That was a critical factor. I think the court assumed that and undertook and calculated that in awarding the fee. And I don't see how the fee would be reduced, even if you did the analysis of the full third step under Mackey. I don't see how a fee in this case would be reduced. Our fee was not even a two times multiple of the ultimate award that we got. We're the total opposite. Our fee award is not a multiple of 109 times or 33 times, which Mackey ultimately ended up being. Our award of $354,000 is not even two times the amount of the ultimate award of that $736,000. But we think that the success is the most critical factor. The trial court took that into consideration. And even if this court looks at it and finds that there was an error committed as to the third step, I respectfully suggest to the court that that error is harmless. And as we mentioned at page 33 of our brief on that section, that it's harmless error and that the court could well distinguish the analysis under McAfee and the rulings under McAfee as to this case and the results obtained in this case against the amount sought. The next issue is the joint and several liability. The trial court did not abuse its discretion in finding that there's joint and several liability as to the three defendants in the case. It listed numerous factors, such as had single counsel. All the defenses were defenses as to all three of the defendants. The claims against were the same against all three of the defendants under count one of this pleading. We had to use the same witnesses against all the same defendants. And the court's analysis of it does not show an abuse of discretion in making that decision as to joint and several liability. And, Your Honors, thank you very much for your time. All right, let's hear from the amicus. Good morning. My name is Mary Reser. I represent the Secretary of Labor. We'd like to make three points this morning. First, the two-year statute of limitations under 1658B does not apply to retaliation claims under the Sarbanes-Oxley Act, 1514A. Second, emotional distress damages are available under the remedies section of this provision. And third, Ms. Jones did exhaust her administrative remedies before the Department of Labor. First, with regard to the statute of limitations, the two-year statute of limitations applies to private actions which involve claims of securities fraud. This is an action involving retaliation, an employment law action, not a claim of securities fraud. If the court were to hold that 1658B does apply, it could lead to the absurd result that a whistleblower who reports claims of fraud under the mail fraud, wire fraud, bank fraud portions of the Sarbanes-Oxley Act would be subject to the four-year statute of limitations. But if she reported securities fraud, she would be subject to a two-year statute of limitations. That can't be correct. So we would think that 1658A would be the most reasonable statute of limitations for filing in district court. Secondly, Ms. Jones did exhaust her administrative remedies. The Department of Labor has established a very informal process for filing complaints under the whistleblower provisions of over 20 different statutes. And a complaint doesn't have to have any particular form. It could be in writing. It could be an oral complaint. It could be in any language. The point of it is to allow the agency to resolve claims administratively before a complaint goes into court. And Ms. Jones adequately placed OSHA on notice by naming Phillips and Rose in her complaint and identifying them as persons who are alleged to have violated the complaint, who the complaint is being filed against. Finally, we believe that emotional distress damages are available under the main text of the remedies provision, which says that a prevailing employee is entitled to all relief necessary to make the employee whole. And the compensatory damages shall include reinstatement, back pay, and compensation for any special damages sustained as a result of the discrimination. We do agree with, as Mr. Jordan pointed out, the Fifth Circuit has recently issued a decision in Halliburton finding emotional distress damages are available. So did the Tenth Circuit in Lockheed. And two other circuits, the Seventh and Eighth Circuits, have also found emotional distress damages available under a similar, almost materially identical language section of the remedies provision of the False Claims Act. So four circuit courts have found emotional distress damages available to employees under this language, all relief necessary to make the employee whole. The cases cited by appellant, the district court cases involve Title VII and pre-amendment Title VII, which was strictly an equitable provision, unlike the Sarbanes-Oxley Act, which includes equitable as well as legal relief. So if the court finds that the text of the statute is not plain, in fact, that it's ambiguous, then we would ask the court to defer to the Department of Labor because the Department of Labor has been granted authority to interpret this provision of the Sarbanes-Oxley Act through adjudication. The department has issued decisions in many whistleblower cases, Sarbanes-Oxley as well as Air 21, the ERA and STA. May I continue, Your Honor? Finish up. Just finish up my sentence. Just granting emotional distress damages in similar whistleblower situations. Thank you. Holden, you have time to reply. I'd first like to finish my thought that I was proceeding with before, and that is between 2004 and 2010, there was this long line of cases. Say that again. Between 2004, starting with Hanna versus WCI, all the way through Hemphill versus Salonese in 2009, and then Jones versus Federal in 2010, the courts held that there was non-pecuniary damages that were not available under the statute. Then Congress amended Sarbanes-Oxley, and in so doing, they amended it to increase the time to file from 90 to 180. They said, no, you're wrong, you are entitled to a jury trial. Three of those cases held, there's no jury trial. But they left the remedy procedures alone. And Congress is imputed with the knowledge, and we're supposed to assume that Congress has the knowledge of these judicial decisions when they reenact a statute, but leave certain provisions in as they are in. But the circuit courts, though, don't agree with you. The Fifth Circuit disagrees with you. The Tenth disagrees with you. And tell me why the language of all relief, all relief necessary to make the employee whole, why doesn't that include emotional damages? That can be the primary part of a retaliation claim, emotional damages. Make whole relief under the statute is considered restitutional, not compensatory. It's to make the employee whole, to make the person whole. Right, and make whole relief, just like in the ADEA, the National Labor Relations Act, the ERISA statute, and the Family Medical Leave Act. These make whole reliefs are considered an equitable remedy. Make whole relief is a term of art. It's not just something that we say, well, we need to make them all better the way they were before. Make whole relief is considered restitutional, and restitutional, as the courts have held, that look at the statute carefully, is that restitutional as compared to compensatory. And that's where the courts, respectfully, the Fifth Circuit has got it wrong, and that is because the False Claims Act is, in fact, compensatory. It provides for two times your damages. It does not provide. So it's a compensatory statute. It's not considered just restitutionary. That's the difference between these statutes. I would point out that in forming the statute, Congress referred to the procedures of the Foreign Aviation Act, but formed its own remedial provisions. They could have, but they did not. They could have said, including but not limited to, but they did not. They could have made it very clear, either when they enacted it or when they amended it, that this includes emotional damages, but when you read the statute, it's clear. Why do they have to say that, though? If they were saying all relief necessary, they're talking about the universal basket. So why do they have to pick out one component of relief and emphasize that if they've placed the whole basket in the category of relief that can be obtained? Because they specifically talked about three different kinds of restitutional damages, fees, costs, and expert witness fees. Those are the kinds of restitutional out-of-pocket expenses that are in line with the traditional thought of equitable make-whole relief. It's not anything else, unlike the False Claims Act. So the court in Congress, in enacting the statute and then not amending it to change it, clearly is saying that these are restitutional, and that's why the courts have held. A couple other points. You do have our project vote case that says that including, shall include, does not mean limited to. Yes, I understand that, Your Honor. I don't believe that that statute applies here because, again, that wasn't dealing with a non-restitutional case. So you're saying that shall include does mean limited to in this case? I'm saying that shall include means... Limited to. In other words, you get what's listed here and nothing else. I believe, Your Honor, that... Yes, I think it is an exhaustive list and that the intent here is not to broaden the remedies but to identify what those remedies are. You're saying it's limited to. I think it is. Okay. Yes, Your Honor. A couple other quick issues. You have to take a look at the idea of attorney's fees and that the court failed to address these three individual defendants and the claims, the three individual separate claims against them. They were not adjudicated as joint tort defeasors but in looking at the fees, they failed to say, okay, $50,000 against you as compared to $350,000 against South Peak. That's the part that the court failed to do. May I finish? That's what the court failed to do and in so doing, we think there was an abuse of discretion. We'd ask that this court either vacate or reverse the decision according to the relief request. Thank you, Mr. Holt.
judges: William B. Traxler, Jr., Barbara Milano Keenan, Stephanie D. Thacker